UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR RIVAS GAONA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br><br>　　　　　Defendant. | Case No.  13-cv-03204 JCS<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 20 |

## I.　INTRODUCTION

Plaintiff, Salvador R. Gaona, contends that he is disabled under the Social Security Act ("SSA"), 42 U.S.C. § 423(d)(1), claiming an onset date of December 1, 2008. He filed for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the SSA, respectively. Certified Administrative Record ("AR") at 140-50. The Acting Commissioner of Social Security ("the Commissioner") denied his application for benefits. Mr. Gaona exhausted the administrative remedies available to him with respect to his disability claims and now seeks review of the Commissioner's decision. He asks the Court to find that he is disabled and remand for award of benefits or, in the alternative, to reverse and remand for further proceedings. The parties have filed cross-motions for summary judgment. For the reasons stated below, the Court GRANTS the Plaintiff's Motion, DENIES the Commissioner's Motion and remands for further proceedings consistent with this order.[1]

---

[1] The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Procedural History

On January 6, 2010, Mr. Gaona filed for DIB and SSI under Titles II and XVI of the Social Security Act, respectively. AR at 140-50. In both applications, Mr. Gaona alleged disability beginning December 1, 2008. AR at 140, 147, 164. These claims were denied initially on September 23, 2010, and upon reconsideration on January 28, 2011. AR at 23. Thereafter, Mr. Gaona filed a written request for hearing on February 9, 2011. AR at 23. On August 5, 2011, Mr. Gaona appeared and testified before ALJ Maxine R. Benmour. AR at 38-69. On September 22, 2011, the ALJ found that Mr. Gaona was not disabled and denied his DIB and SSI applications. AR at 23-33. On April 4, 2013, the Appeals Council denied Mr. Gaona's request for further review, making the Commissioner's decision final. AR at 3-5.

Mr. Gaona timely filed the complaint in this action on July 11, 2013, seeking review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which gives the Court jurisdiction to review the final decision of the Commissioner.

### B. Mr. Gaona's Background

Mr. Gaona was born on May 30, 1966. AR at 27. At the administrative hearing, Mr. Gaona testified that he came to the United States in 1982 and then added that he came "[b]etween '89 and '82, something like that." AR at 44. Therefore, it is unclear from the record exactly when he came to the United States. In addition, Mr. Gaona stated that he completed twelfth grade in 1984. AR at 44, 165. Because the exact date when Mr. Gaona came to the United States is unclear, it is also unclear whether he completed twelfth grade in the United States or in Mexico. The question of where Mr. Gaona completed high school was not addressed at the administrative hearing. AR at 39-69.

Mr. Gaona worked as a carpenter from January of 1995 until July of 2006, working eight hours a day and five days a week. AR at 165. He has not been engaged in any substantial gainful activity since December 1, 2008. AR at 25.

### C. English Language Ability

In a Disability Report, in response to the question "[c]an you speak and understand

English," Mr. Gaona answered "[n]o." AR at 163. In response to a follow-on question asking "[w]hat language do you prefer," he answered "Spanish." AR at 163. In the same report, in response to the question "[c]an you read and understand English," Mr. Gaona answered "[y]es." AR at 163. In response to the question "[c]an you write more than your name in English," Mr. Gaona also answered "[y]es." AR at 163. Mr. Gaona answered the remainder of the questions in the Disability Report, most of which called for "yes" or "no" answers, in English. AR at 163-171. The Disability Report states that the report was completed by "The person who is applying for disability (Go to Section 3 - Medical Conditions)." AR 164. The responses are typed, however, suggesting the answers may have been filled in with the assistance of the agency.

In contrast, on the Exertion Questionnaire, which requires longer narrative responses than the Disability Report, Mr. Gaona wrote his responses in Spanish. AR at 174. On that form, all of the responses were handwritten. AR 174. There is no indication that Mr. Gaona received assistance in completing the Exertion Questionnaire.

Finally, according to Dr. Andrew Burt, who conducted an orthopedic evaluation of Mr. Gaona on July 22, 2011, Mr. Gaona "speaks English fairly well, but he cannot read and write in English." AR at 380. Dr. Burt wrote in his report that Mr. Gaona "does read and write in Spanish, a little bit," but continued, "[a]pparently, he's only marginally literate in Spanish." AR at 380.

**D.     Mr. Gaona's Medical History**

**1.     Left hand injury**

In or around 1982, Mr. Gaona suffered a laceration to his left palm. AR at 27, 51. Since then, he has experienced chronic numbness secondary to damage to his left ulnar nerve. AR at 27, 51. In January of 2011, Mr. Gaona's treating physician noted a scar on Mr. Gaona's left hand palm. AR at 28. Physical examination by Dr. Gerald Eliaser revealed some numbness with reduced grasping strength in Mr. Gaona's fingers, but Dr. Eliaser determined that Mr. Gaona was still able to move his fingers well. AR at 348.

At the administrative hearing, Mr. Gaona testified that recently he had reinjured his left hand and that his doctor had recommended surgery to reconnect his tendons. AR at 52. He testified that the surgery was to be scheduled at his upcoming follow-up appointment with his

1  doctor, on August 16, 2011. AR at 52. Mr. Gaona stated that he cannot move his left hand, but
2  mentioned that the pain medication helps reduce the pain for a couple hours. AR at 52.

### 2. Right hand impairment

In 1992, Mr. Gaona injured his right hand; in 2001 he suffered a Boxer's fracture to his fourth metacarpal. AR at 28, 334. In 2006, Mr. Gaona suffered from a fall and reinjured his right hand. AR at 58-59. He was seen by a doctor after this injury and was told that there was a fracture of one of the bones of his right hand. AR at 378. He wore a cast and was able to return to work after the cast was removed, but he was left with ongoing pain in the area of the fracture site at the ulnar side of the right hand. AR at 378. According to Dr. Burt, this injury produced some interference with gripping, grasping, and torque activities, but Mr. Gaona was able to do his job as a carpenter and worked around the pain and numbness in his hand. AR at 378. In January of 2011, Mr. Gaona complained of right hand pain with grasping. AR at 28, 348. Dr. Burt's report, dated July 22, 2011, stated that Mr. Gaona complained of pain in the right hand, mostly to the dorsal and ulnar side. AR at 379. Mr. Gaona was aware of a deformity in that area from the old fracture and stated that gripping, grasping, impact and torque activities increase the right hand pain. AR at 379. According to Mr. Gaona's testimony at the hearing, this injury caused him not to be able to lift more than a pound. AR at 60.

### 3. Left knee pain

In or around 2006, while on the job, Mr. Gaona fell about 10 feet from some scaffolding and landed on his left side. AR at 378. As a result of this fall, he experienced pain and swelling in his left knee. AR at 378. He was eventually seen at Kaiser Permanente and x-rays of his knee were taken. AR at 378. He was told that there was "a little crack in the bone." AR at 378. In July of 2008, he reported increasing left knee pain as well as an occasional catching sensation. AR at 267. X-rays of his bilateral knees showed evidence of Osgood-Schlatter's disease with some lateral patellofemoral spurring. AR at 266. He was ultimately diagnosed with left knee internal derangement. AR at 266. Mr. Gaona was referred to physical therapy and was prescribed muscle relaxants. AR at 268. In December of 2009, he sought treatment for swelling and some catching and occasional giving way symptoms in his left knee. AR at 266. X-rays of his bilateral

knees remained the same. AR at 266. A magnetic resonance imaging ("MRI") scan of his left knee revealed mild early arthritic changes of the posterior aspect of the lateral compartment. AR at 265. His treating physician recommended possible surgery; however, Mr. Gaona did not undergo surgery. AR at 28, 378.

### 4. Low back pain

Mr. Gaona has a history of low back pain, which affects his ability to stand and walk for extended periods. AR at 28. The pain that he experiences when standing and walking limits his ability to exercise. AR at 28-29. In January of 2009, a MRI scan of his lumbar spine revealed mild degenerative spondylosis at L4-5 and L-5-S1 with no definite focal disc herniation. AR at 235.

### 5. Obesity

Treatment notes from 2011 indicate that Mr. Gaona weighed 215 pounds and stands 5'10" tall. AR at 340. The notes also indicate that his Body Mass Index ("BMI") was 30.85. AR at 340; *see also* AR at 29 (ALJ's finding, using standards developed by the National Institute of Health, that Mr. Gaona is slightly obese with a BMI of 30.8).

### E. Administrative Hearing

#### 1. Mr. Gaona's testimony

Mr. Gaona appeared before the ALJ for an administrative hearing on August 5, 2011 with a Spanish interpreter. AR at 38, 40. At the hearing, Mr. Gaona's attorney stated that Mr. Gaona "has a good understanding of English," and likely would not require the assistance of the interpreter to understand the ALJ's questions. AR at 42. He explained that Mr. Gaona might have difficulty responding to the ALJ's questions, however, and that he might use the interpreter if he had to explain something that was "complicated or more than one part." AR at 42. When the ALJ asked him if his "ability to speak English" was "good, fair, excellent, or outstanding," Mr. Gaona described his ability to speak English as "fair." AR at 44.

#### 2. Vocational expert's testimony

The ALJ also called a vocational expert ("VE"), Jeff Beaman, to testify. AR at 61. The ALJ solicited testimony from the VE about the types of jobs that would be available for several

hypothetical individuals. AR at 62-64.

The first hypothetical was an individual with Mr. Gaona's "age, education and work background" with the following limitations: lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing, walking six hours each in an eight-hour day; occasional climbing of ladders, ropes and scaffolds and occasional crawling; frequent climbing of ramps and stairs; frequent balancing, stooping, kneeling and crouching; frequent handling and fingering bilaterally. AR at 62. The VE testified that this hypothetical individual would not be able to perform Mr. Gaona's past work as a carpenter, but the individual would be able to do "light and sedentary unskilled" work. AR at 63. In particular, according to the VE, such an individual could work as an assembler or a machine operator in any industry. AR at 63. According to the VE, these types of jobs are classified as "SVP two." AR at 63. SVP stands for "specific vocational preparation" and the SVP level of a Dictionary of Occupational Titles ("DOT") listing addresses the time it takes a typical worker to learn the job. *Harrington v. Comm'r of Soc. Sec. Admin.*, No. 07-1330 (JM), 2008 WL 4492614 at *9 (S.D. Cal. Sept. 29, 2008) *on reconsideration in part sub nom. Harrington v. Astrue*, No. 07-1330 (JM), 2009 WL 102689 (S.D. Cal. Jan. 14, 2009). The VE testified that approximately 8,000 assembler and 10,000 machine operator jobs exist in the San Francisco Bay Area. AR at 63.

The ALJ then modified the manipulative requirements of the first hypothetical to "occasional grasping bilaterally and occasional to frequent fingering and reaching bilaterally." AR at 63. The VE testified that these modifications would eliminate the individual's ability to work as an assembler or a machine operator. AR at 63-64. The ALJ then asked the VE if there would be other jobs in the regional or national economy that type of person could do. AR at 64. Before answering the ALJ's question, the VE asked the ALJ to clarify the language or literacy, or the communication ability of this hypothetical individual. AR at 64. The ALJ answered, "I don't know how you would factor this in." AR at 64. She added that "the person speaks some English, but not totally fluent." AR at 64. The VE suggested that this individual could work as an usher or a counter clerk, and went on to describe these positions as "high visibility." AR at 64. The VE testified further that an individual who holds such a job would "need to communicate with the

6

public, even though on an unskilled basis." AR at 64. According to the VE, these types of jobs are classified as SVP two. AR at 64. The VE then testified that approximately 8,000 usher and 3,000 county clerk jobs exist in the San Francisco Bay Area. AR at 64-65.

The ALJ then changed the hypothetical to the following: lifting and carrying, 10 pounds occasionally, less than 10 pounds frequently; sitting six hours in eight hour day; standing, walking; needs to alternate sitting and standing as needed; the postural requirements restrictions remain the same as the previous hypothetical; frequent handling and fingering. AR at 65. The VE testified that this individual can do sedentary unskilled work like "something along the lines of machine operation" or "possibly something along the lines of clerk." AR at 65. According to the VE, these types of jobs are classified as SVP two. AR at 65. The VE testified that there are around 3,000 of such jobs existing in the San Francisco Bay Area. AR at 65.

Finally, the ALJ asked if a person would be able to do any jobs if this person needs to lie down during the workday for three or four hours. AR at 65-66. The VE testified that this person would not be employable. AR at 66.

When Mr. Gaona's attorney asked the VE about the English language ability the hypothetical individuals should possess in order to perform any of the jobs the VE had suggested, the VE testified that the jobs would require the individual to achieve SVP level one or two. AR at 66. To explain what this meant, the VE offered examples as to the machine operator position. AR at 66. According to the VE, a machine operator position, at SVP level two, would require the individual to have a reading ability such that he or she could recognize the meaning of five to six thousand words, read at a rate of 190 to 215 words per minute, read adventure stories such as comic books, and look up unfamiliar words in dictionary for meaning, spelling and pronunciation. AR at 67.

Mr. Gaona's attorney then asked the VE whether a person would be able to do any light work if he or she had to use a cane for the light work. AR at 67. The VE testified that such person would not be able to do any light work because he or she "basically [would] only [be] able to use one arm either dominant or nondominant." AR at 67-68.

**F.     The Five-Step Analysis and the ALJ's Findings**

  **1.     The Five-Step Analysis**

A claimant is eligible for disability benefits under the SSA if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(a)(1). But the claimant is only disabled if his physical or mental impairments are of such severity that he cannot do his previous work and "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Commissioner established a sequential five-step evaluation process to determine whether a claimant meets this definition. 20 C.F.R. § 404.1520(a). If the Commissioner concludes that the claimant is or is not disabled at one of the steps, the Commissioner does not proceed to the next step. *Id*. § 404.1520(a)(4). Otherwise, the evaluation proceeds to the next step. The claimant bears the burden of proving Steps One through Four. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). At Step Five, the burden shifts to the Commissioner to prove that the claimant can perform other work. *See Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995).

At Step One, the Commissioner considers the claimant's work history. 20 C.F.R. § 404.1520(a)(I). If the claimant is doing "substantially gainful activity," the claimant is not disabled. *Id*. If not, then the evaluation proceeds to Step Two. *Id*.

At Step Two, the Commissioner considers whether the claimant has a "severe medically determinable physical or mental impairment" or combination of such impairments that has lasted or is expected to last more than 12 months. *Id*. § 404.1520(a)(ii). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id*. § 404.1520(c). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). "A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic

1  work activities." Social Security Ruling ("SSR") 85-28. If medical evidence does not clearly

2  establish such a finding, the evaluation proceeds to the next step. *Id*.

3       At Step Three, the Commissioner compares the claimant's impairment(s) with a list of

4  impairments that the Commissioner has determined are disabling ("Appendix 1"). 20 C.F.R. §

5  404.1520(a)(iii). If the impairment(s) "meets or equals" in severity an item on the list and meets

6  the duration requirement, the claimant is disabled. *Id*. Otherwise, the Commissioner proceeds to

7  Step Four. *Id*.

8       At Step Four, the Commissioner considers the claimant's Residual Functional Capacity

9  ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is the most the claimant can do in

10  light of the physical and/or mental limitations caused by the impairment(s). *Id*. § 404.1545. If the

11  claimant can perform his past relevant work, he is not disabled. *Id*. Past relevant work is work

12  that the claimant has done in the fifteen months prior to the evaluation and was substantial gainful

13  activity that lasted long enough for the claimant to learn to do it. *Id*. § 404.1560(b)(I). If the

14  claimant cannot perform his past relevant work, the evaluation proceeds to Step Five. *Id*. §

15  404.1545.

16       At Step Five, the Commissioner has the burden to demonstrate that the claimant can

17  perform "other work" that exists in "significant numbers" in the national economy, taking into

18  account the claimant's RFC, age, education, and work experience. *Tackett v. Apfel*, 180 F.3d

19  1094, 1100 (9th Cir. 1999) (citing 20 C.F.R § 404.1560(b)(3)); 20 C.F.R § 404.1520(a)(v). "The

20  term education . . . includes how well you are able to communicate in English since this ability is

21  often acquired or improved by education." 20 C.F.R. § 404.1564(b). It also includes English

22  language literacy, which refers to the ability to read and write in English. *Id*. If the Commissioner

23  finds the claimant can make an adjustment to other work, he is not disabled. *Id*. If he cannot, he

24  is disabled and eligible for disability benefits. *Id*.

25      **2.**    **The ALJ's Findings**

26       At Step One, the ALJ found that Mr. Gaona has not engaged in substantial activity since

27  December 1, 2008, the alleged onset date. AR at 25.

28       At Step Two, the ALJ found that Mr. Gaona has the following severe impairments:

9

obesity, right hand pain secondary to metacarpal fracture and trauma, low back pain secondary to mild degenerative disc disease, left knee pain secondary to internal derangement, and left hand numbness secondary to ulnar nerve damage. AR at 25. These impairments are severe because they more than minimally affect Mr. Gaona's ability to perform basic physical work-related activities. AR at 25. The ALJ found that Mr. Gaona's hypertension, abdominal pain secondary to gastroenteritis, and possible kidney stone were not a severe impairment. AR at 26. Upon reviewing Mr. Gaona's medical records, the ALJ found that Mr. Gaona's abdominal pain was acute and successfully treated with medication. AR at 26. The ALJ also noted that Mr. Gaona has a history of substance (cocaine) dependence. AR at 26. The ALJ cited treatment notes that indicated Mr. Gaona stopped using cocaine in or around July of 2008. AR at 26. According to the ALJ, in February of 2010, Mr. Gaona reported continued sobriety. AR at 26. The ALJ found that Mr. Gaona's physical impairments would persist despite his sobriety. AR at 26. Accordingly, the ALJ determined that Mr. Gaona's history of substance dependence was not a contributing factor material to the determination of disability. AR at 26.

At Step Three, the ALJ found that Mr. Gaona did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1. AR at 26. The ALJ found no evidence in the record suggesting that Mr. Gaona was unable to ambulate effectively for at least two hours in an eight-hour workday. AR at 26.

At Step Four, the ALJ found that Mr. Gaona has the residual functional capacity to perform a less than full range of sedentary work. AR at 26. In particular, she found that Mr. Gaona has the following limitations: Mr. Gaona can lift and/or carry up to ten pounds occasionally and less than ten pounds frequently. AR at 26. He can sit six hours in an eight-hour workday. AR at 26. He can stand and/or walk in combination up to two hours in an eight-hour workday. AR at 26. He must alternate between sitting and standing as needed. AR at 26. He can frequently handle and finger bilaterally. AR at 26-27. He can frequently climb ramps and stairs, but only occasionally climb ladders, ropes, and scaffolds. AR at 27. He can occasionally crawl and frequently balance, stoop, kneel, and crouch. AR at 27.

The ALJ stated that in making these findings, she considered all symptoms and the extent

to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and opinion evidence. AR at 26-27. In determining Mr. Gaona's RFC, the ALJ gave significant weight to Dr. Frank Chen's opinion regarding Mr. Gaona's need to use an assistive device because it is consistent with the medical record, as well as Mr. Gaona's own statements. AR at 30. She cited Mr. Gaona's statement to Dr. Chen that he can walk two to three blocks without the use of a cane and further stated that he uses his cane "off and on." AR at 30. She concluded that these statements are consistent with a finding that Mr. Gaona can perform the minimal standing and walking requirements of sedentary work. AR at 30. The ALJ gave reduced weight to Dr. Andrew Burt's opinion that Mr. Gaona was "unable to participate in gainful employment" because Dr. Burt failed to identify any functional limitations caused by Mr. Gaona's severe impairments. AR 30-31. The ALJ also gave reduced weight to Dr. Gerald Eliaser's opinion that Mr. Gaona can "grasp, turn, and twist objects up to two hours in an eight-hour workday," and he can "perform fine manipulation and overhead reaching up to four hours in an eight-hour workday." AR at 30. According to the ALJ, Dr. Eliaser based his opinion on Mr. Gaona's old injuries and a review of the record revealed that Mr. Gaona returned to very heavy work after these injuries. AR at 30. Therefore, the ALJ found that Mr. Gaona is limited to frequent bilateral handling and fingering based on his relatively normal physical findings, as well as his ability to return to very heavy work after each hand injury. AR at 30.

At Step Five, the ALJ found that Mr. Gaona is unable to perform any past relevant work. AR at 31. She found that he has "a limited education and is able to communicate in English." AR 31. She went on to conclude based on his "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." AR 31. In particular, she found that Mr. Gaona could work as a machine operator, or a clerk, and that such jobs exist in significant numbers in the national economy. AR at 32. Therefore, she found that Mr. Gaona was not disabled. *Id*.

### G. Alleged Error by the ALJ

Mr. Gaona contends the Commissioner did not meet its burden at Step Five because it is unclear from the record whether he can read and write in English and the ALJ did not elicit

testimony on this question in order to resolve the ambiguity in the record. He further asserts that because the ALJ failed to address a critical consideration at Step Five of the sequential analysis, the decision cannot be deemed based on substantial evidence and free of legal error. *Id*. The Commissioner counters that Plaintiff's own admission, namely, his statement on the Disability Report that he can "read and understand English," is substantial evidence that Plaintiff is not illiterate.

### III. ANALYSIS

#### A. Legal Standard

When reviewing the Commissioner's decision, the Court takes as conclusive any findings of the Commissioner that are free from legal errors and "supported by substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence means "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec'y of Health and Human Serv.*, 846 F.2d 573, 576 (9th Cir. 1988) (citations omitted). Even if the Commissioner's findings are supported by substantial evidence, they should be set aside if proper legal standards were not applied when using the evidence to reach a decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). In reviewing the record, the Court must consider both the evidence that supports and detracts from the Commissioner's conclusion. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Id.* at 1039–40. However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

### B. Whether ALJ Had a Duty to Resolve Ambiguity Regarding Plaintiff's English Language Ability

In considering whether a claimant for disability can perform "other work," the Commissioner must take into account the claimant's education, which includes English language literacy (defined as the ability to read or write) and ability to communicate in English. 20 C.F.R. § 404.1564(b).[2] Further, because the burden is on the Commissioner to show that the claimant can perform "other work," it is likewise the Commissioner's burden to show that the Plaintiff's English language abilities are sufficient to perform such work. *See Silveira v. Apfel,* 204 F.3d 1257, 1261 n. 14 (9th Cir. 2000). The Commissioner has not met that burden here.

The ALJ found that Mr. Gaona was not disabled on the ground that he could perform "other work" as a machine operator and a clerk, both of which carry an SVP level of 2. At the administrative hearing, the VE testified that an individual at this level would need to recognizing 6,000 words, read at a rate of 190 to 215 words per minute and be able to read "adventure stores such as comic books" and look up unfamiliar words in the dictionary. AR 67. Yet the ALJ did not elicit any testimony regarding Mr. Gaona's ability to read and write and the evidence on this point is conflicting.

First, there is the Disability Report, which states that Mr. Gaona cannot speak English but can read and write English. The Commissioner argues that the latter statement constitutes an admission that supports the Commissioner's decision. The Court disagrees. Given that this form includes the statement that Mr. Gaona could not speak English, which was clearly incorrect, the responses on the form do not provide substantial evidence that Mr. Gaona can read and write in English; rather, the inconsistencies suggest the answers were unreliable as to Plaintiff's language ability and that further development of the record on this question might be necessary. This is especially true as other evidence in the record indicates that Mr. Gaona may not be able to read and write in English. In particular, on the Exertion Questionnaire, which Mr. Gaona apparently completed without assistance, he responded entirely in Spanish. AR 174. In addition, Dr. Burt

---

[2] Plaintiff does not challenge the ALJ's finding that he can "communicate" in English to the extent that he can understand spoken English and respond orally. Rather, he argues that there is insufficient evidence to show that he is literate, that is, that he can read and write, in English.

stated that Plaintiff could not read and write in English.[3]  AR 380.  Finally, the evidence in the record is ambiguous as to whether Plaintiff completed high school in the United States or Mexico, as discussed above.

In short, the Court finds that the ALJ failed to resolve ambiguities in the record regarding Plaintiff's ability to read and write in English.  Similarly, she failed to include relevant information in her hypotheticals on this issue.  As a consequence, the Commissioner's conclusion that Plaintiff can perform work as a construction worker or a clerk is not supported by substantial evidence.  Accordingly, the Court REVERSES the decision of the Commissioner and REMANDS for further development of the record addressing whether Plaintiff's ability to read and write in English is sufficient to perform the jobs identified by the ALJ as "other work" that Plaintiff can perform.  *See Kong v. Astrue*, 2011 WL 674048, at * 11-13 (E.D. Cal. Feb. 16, 2011) (holding that where hypothetical did not address language limitations of non-English speaking claimant and ALJ did not explain why, in light of language limitations, claimant could perform job classified as SVP level 1 under DOT, case should be remanded for further development of the record on this issue) (citing *Pinto v. Massanari*, 249 F.3d 840, 846-847 (9th Cir. 2001));  *Lopez v. Astrue*, 2010 WL 2674432, at *3-4 (C.D. Cal. July 1, 2010) (holding that where hypothetical assumed an individual with "adequate ability to read and write in English" but evidence showed that the claimant was "virtually unable to communicate" in English and "other work" identified by ALJ carried an SVP level of 3, it was necessary to remand for further development of the record as to whether the claimant could perform "other work" in light of his ability to read, write or speak English).

## IV.  CONCLUSION

For the foregoing reasons, the Court REVERSES the decision of the Commissioner and remands for further proceedings consistent with this order.  The Clerk is directed to enter judgment in favor of Plaintiff Salvador Rivas Gaona and against Defendant Carolyn W. Colvin,

---

[3] Although the Commissioner notes that the ALJ gave little weight to Dr. Burt's opinions, see Defendant's Motion at 6, it is clear from the ALJ's decision that she was addressing only Dr. Burt's opinion as to Plaintiff's ability to work in light of his *physical limitations*.  *See* AR 31.

Acting Commissioner of Social Security.

**IT IS SO ORDERED.**

Dated: April 21, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge